UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| T.M.H., *a minor, by her grandmother,* M.R.C., *Plaintiff*, vs. CAROLYN W. COLVIN, *Acting Commissioner of the Social Security Administration*, *Defendant*. | No. 1:15-cv-01006-JMS-MJD |

**ENTRY REVIEWING THE COMMISSIONER'S DECISION**

Plaintiff M.R.C.,[1] on behalf of T.M.H., a minor, appeals the termination of Supplemental Security Income ("SSI") benefits. On December 21, 2007, T.M.H.'s mother applied for SSI benefits on T.M.H.'s behalf, alleging disability beginning on T.M.H.'s date of birth, November 18, 2007. [Filing No. 12-5 at 2.] The Social Security Administration ("SSA") found that T.M.H. was disabled due to mental retardation and granted benefits on July 22, 2008. [Filing No. 12-4 at 5.] However, on February 9, 2012, the SSA determined that T.M.H. was no longer disabled because of medical improvement and terminated her benefits. [Filing No. 12-4 at 2.] That determination was upheld on reconsideration. [Filing No. 12-4 at 32.] At M.R.C.'s request, a hearing was held on February 11, 2013, before Administrative Law Judge Daniel J. Mages (the "ALJ"), at which M.R.C. and T.M.H.'s mother both testified. [Filing No. 12-2 at 56-73.] After additional medical evidence had been entered, a supplemental hearing was held on November 4, 2013. [Filing No. 12-2 at 36-55.] M.R.C. and T.M.H.'s mother testified again, as did Dr.

---

[1] To protect the minor claimant's privacy pursuant to Federal Rule of Civil Procedure 5.2, the Court will also refer to the plaintiff pursuing this action on T.M.H.'s behalf by her initials.

1

Georgiann Pitcher, Ph.D., a licensed psychologist and medical expert. [Filing No. 12-3 at 36-55.] The ALJ issued an opinion on February 8, 2014, concluding that T.M.H.'s disability ended as of April 30, 2012, and that she is no longer entitled to SSI benefits. [Filing No. 12-2 at 12-29.] The Appeals Council denied M.R.C.'s request for review, [Filing No. 12-2 at 2], rendering the ALJ's ruling the final decision of the Defendant, Commissioner of the Social Security Administration ("Commissioner"), for the purposes of judicial review. 20 C.F.R. § 404.981. M.R.C. filed this action on behalf of T.M.H. under 42 U.S.C. § 405(g), asking the Court to review the ALJ's decision. [Filing No. 1 at 1-3.]

## I.
## APPLICABLE STANDARD OF REVIEW

"Social security disability benefits are designed for disabled workers, but low-income parents [or guardians] may obtain them on behalf of disabled children as well." *Keys v. Barnhart*, 347 F.3d 990, 991 (7th Cir. 2003). For a child to be considered disabled, it must be shown that the child "has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(C)(i). A child's continued eligibility for benefits must be reviewed periodically. 20 C.F.R. § 416.994a(a). All submitted evidence will be considered and decisions will be made "on a neutral basis, without any initial inference as to the presence or absence of disability being drawn from the fact that [the child has] been previously found disabled." 20 C.F.R. § 416.994a(a)(2).

To decide whether a child's disability continues or has stopped, the SSA uses a five-step process.[2] 20 C.F.R. § 416.994a(b). First, it must be determined whether there has been medical improvement in the child's impairment or impairments since the last favorable decision. 20 C.F.R. § 416.994a(b)(1). If there has been no medical improvement, the child is still disabled. *Id.*

If there has been medical improvement, the second step is to determine whether the impairment or impairments still meet or equal the severity of the listed impairment that was met or equaled before. 20 C.F.R. § 416.994a(b)(2). If the impairment or impairments still meet or equal the severity of that listed impairment, the child is still disabled. *Id.*

If the impairment no longer meets or equals the severity of the listed impairment previously met, the third step is to determine if the child is currently disabled. 20 C.F.R. § 416.994a(b)(3). In making that determination, all impairments the child now has will be considered. *Id.* Specifically, it must be determined whether her current impairment or impairments are severe. 20 C.F.R. § 416.994a(b)(3)(i). If the impairments are not severe, the child is no longer disabled. *Id.*

If the current impairments are severe, the fourth step is to determine whether they meet or medically equal the severity of a listed impairment. 20 C.F.R. § 416.994a(b)(3)(ii). If the child meets or medically equals a listed impairment, the child will be considered disabled. *Id.*

If the child does not meet or medically equal a listing, the fifth step is to determine if the child's condition "functionally equals" a listing. 20 C.F.R. § 416.994a(b)(3)(iii). To determine if a child's impairment or combination of impairments functionally equals a listing, the child's functioning must be assessed in terms of six broad functional areas or "domains" intended to capture all of what a child can and cannot do: (1) acquiring and using information; (2) attending

---

[2] In his opinion, the ALJ refers to a three-step process. This is the same standard, although the Court will trifurcate the analysis that the ALJ terms "step three" into three separate steps (steps three, four, and five) in the interest of clarity.

and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for oneself; and (6) health and physical well-being.  20 C.F.R. § 416.926a(b)(1).  Generally, a child establishes functional equivalence to a listing by showing "'marked' limitations in two domains of functioning, or an 'extreme' limitation in one domain."  20 C.F.R. § 416.926a(a).  If a child does not have marked limitations in at least two domains, or extreme limitations in one domain, she does not functionally equal a listing and is not disabled.  20 C.F.R. § 416.924a(d).  But if a child's current impairment or impairments functionally equal a listing, the child will be considered disabled.  20 C.F.R. § 416.994a(b)(3)(iii).

      This Court's role in reviewing a disability decision is limited to ensuring that the ALJ applied the correct legal standards and that substantial evidence supports the ALJ's findings.  *Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir. 2004) (citation omitted).  "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Id.* (quotation omitted).  The ALJ "need not evaluate in writing every piece of testimony and evidence submitted."  *Carlson v. Shalala*, 999 F.2d 180, 181 (7th Cir. 1993).  However, the "ALJ's decision must be based upon consideration of all the relevant evidence."  *Herron v. Shalala*, 19 F.3d 329, 333 (7th Cir. 1994).  Moreover, "[a]n ALJ may not select and discuss only that evidence that favors his ultimate conclusion, but must articulate, at some minimum level, his analysis of the evidence to allow the [Court] to trace the path of his reasoning."  *Diaz v. Chater*, 55 F.3d 300, 307 (7th Cir. 1995).

      If the ALJ committed no legal error and substantial evidence supports the ALJ's decision, the Court must affirm the denial of benefits.  Otherwise, the Court must generally remand the matter back to the SSA for further consideration; only under rare circumstances can the Court actually order an award of benefits.  *See Briscoe v. Barnhart*, 425 F.3d 345, 355 (7th Cir. 2005).

## II.
### RELEVANT BACKGROUND[3]

T.M.H. was approximately one month old when her mother first applied for SSI benefits on her behalf in December 2007. [Filing No. 12-5 at 2.] T.M.H. was born premature and suffered a traumatic birth, has experienced developmental delays, has had some episodes of asthma, and was diagnosed with Attention Deficit Hyperactivity Disorder ("ADHD"). [Filing No. 12-12 at 3; Filing No. 12-13 at 55; Filing No. 12-13 at 59; Filing No. 12-15 at 106; Filing No. 12-15 at 109.]

Using the sequential evaluation set forth by the SSA, the ALJ found as follows:

- At Step One, the ALJ determined that the most recent decision favorable to the claimant was on July 22, 2008. [Filing No. 12-2 at 15.] At that time, T.M.H. had a medically determinable impairment of mild mental retardation, which was found to meet Listing 112.05 of 20 C.F.R. Part 404, Subpart P, Appendix 1. [Filing No. 12-2 at 15.] The ALJ found that T.M.H. has experienced medical improvement in this impairment as of April 30, 2012. [Filing No. 12-2 at 15-16.]

- At Step Two, the ALJ concluded that T.M.H.'s mild mental retardation no longer meets or medically equals the severity of Listing 112.05, and it has not since April 30, 2012. [Filing No. 12-2 at 16.]

---

[3] The claimant's brief provides a detailed description of T.M.H.'s medical history and treatment, [Filing No. 24 at 2-6], and the Commissioner does not dispute the facts presented, [Filing No. 29 at 2]. Because those facts implicate sensitive and otherwise confidential medical information concerning T.M.H., the Court will simply incorporate the facts by reference herein and articulate material facts only as needed to address the parties' arguments.

- At Step Three, the ALJ found that T.M.H. suffers from the following severe impairments: asthma, a developmental disorder, borderline intellectual functioning, and ADHD. [Filing No. 12-2 at 16.]

- At Step Four, the ALJ concluded that T.M.H.'s impairments do not meet or medically equal the severity of a listed impairment. [Filing No. 12-2 at 28-29.] The ALJ specifically considered several listings, but ultimately concluded that T.M.H. does not meet or medically equal any of them. [Filing No. 12-2 at 28-29.]

- At Step Five, the ALJ concluded that T.M.H.'s impairments do not functionally equal any listings, as T.M.H. has less that marked limitation in each of the six domains. [Filing No. 12-2 at 21-28.]

Accordingly, the ALJ determined that T.M.H.'s disability ended as of April 30, 2012, and that she has not become disabled again since that date. [Filing No. 12-2 at 29.] T.M.H. challenges this determination.

### III.
### DISCUSSION

M.R.C. argues that the ALJ's finding that T.M.H.'s impairments were no longer disabling after April 30, 2012 is erroneous and unsupported by substantial evidence. [Filing No. 24 at 7.] She asserts that the ALJ was "misled" and "confused" by Dr. Pitcher, the medical expert, because her testimony was inconsistent and she "apparently failed to consider" the opinions of two doctors who had diagnosed T.M.H. with ADHD. [Filing No. 24 at 7.] In addition, M.R.C. contends that the ALJ "ignored or rejected" evidence that proves T.M.H. is disabled. [Filing No. 24 at 7-8.]

In response, the Commissioner argues that substantial evidence supports the ALJ's decision. [Filing No. 29 at 4.] The Commissioner contends that it was proper for the ALJ to rely

on Dr. Pitcher's opinion because any possible inconsistency in her testimony was resolved, and she did in fact review the medical opinions that M.R.C. alleges were not considered. [Filing No. 29 at 4-5.] Furthermore, the Commissioner argues that M.R.C. has failed to point to any specific evidence that the ALJ ignored in making his determination, and claims that M.R.C.'s "undeveloped assertion, therefore, is waived." [Filing No. 29 at 6-8.]

In her reply, M.R.C. emphasizes the inconsistencies in Dr. Pitcher's testimony, and maintains that the ALJ erred in relying upon that evidence. [Filing No. 31 at 3.]

### A. Substantial Evidence and the Testimony of Dr. Pitcher

As both parties point out, there is language in Dr. Pitcher's testimony that is somewhat confusing in light of her opinion that T.M.H. has no marked limitations. The ALJ asked Dr. Pitcher how she would evaluate the six domains, and, after some discussion of the records that she had reviewed, Dr. Pitcher stated:

> In the first domain, if we, according to the testimony I just gave, less than marked; the attention deficit, less than marked; *her behavior was marked*; the motor area, none, no impairments there; *the five, age appropriate, mostly marked*; and then I assume that the asthma, it is mild, would be less than marked, but and I'm really not qualified to say.

[Filing No. 12-2 at 51(emphasis added).]

M.R.C. construes Dr. Pitcher's statement to indicate—in a manner inconsistent with the rest of her testimony—that T.M.H. has a marked impairment in the third domain, interacting and relating with others, and a mostly marked impairment in the fifth domain, caring for herself. [Filing No. 24 at 7; Filing No. 31 at 3.] M.R.C. believes that this contradiction in Dr. Pitcher's testimony confused the ALJ and caused him to make a decision unsupported by substantial evidence. [Filing No. 24 at 7-8.] However, the ALJ did not construe Dr. Pitcher's testimony to be contradictory or inconsistent at all, noting in his opinion that "Dr. Pitcher opined that the

7

claimant has 'less than marked' limitation in her ability to interact and relate with others," [Filing No. 12-2 at 24], and "Dr. Pitcher testified that the claimant has 'less than marked' limitation in [the caring for yourself] domain," [Filing No. 12-2 at 26].

An ALJ "must build an accurate and logical bridge from the evidence to his conclusion." *Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000). In doing so, the ALJ "must articulate at some minimal level his analysis of the evidence" and his reasons for accepting or rejecting particular lines of evidence. *Herron*, 19 F.3d at 333. As long as the ALJ's determination is supported by substantial evidence and he articulates his reasoning with sufficient detail and clarity to permit meaningful appellate review, the decision must be affirmed. *See, e.g.*, *Scrogham v. Colvin*, 765 F.3d 685, 695 (7th Cir. 2014). Additionally, any determination the ALJ makes regarding credibility of testimonial evidence is entitled to deference unless it is "patently wrong" and lacking explanation or support. *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008).

It is not clear that Dr. Pitcher's testimony is internally inconsistent—the problematic remarks, "her behavior was marked" and "the five, age appropriate, mostly marked" do not make much sense, let alone clearly indicate an opinion regarding marked limitations in domains three and five. Moreover, it is equally unclear that an inconsistency in Dr. Pitcher's testimony would detract from the overall sufficiency of the evidence supporting the ALJ's decision. Regardless of whether Dr. Pitcher's testimony is inconsistent, substantial evidence exists to support the ALJ's determination.

Notwithstanding the language quoted above, when Dr. Pitcher's testimony is reviewed as a whole, it is apparent that she was of the opinion that T.M.H. does not have marked impairments in any of the six domains. After the hearing, in an effort to rectify the fact that Dr. Pitcher had not been provided two specific records prior to her testimony and perhaps recognizing some confusion

8

with her statements at the hearing, the ALJ sent an interrogatory to Dr. Pitcher asking her if a review of the two records changed her opinion and summarizing her testimony as follows: "you noted less than marked limitation in the domains of Acquiring and Using Information, Attending and Completing Tasks, *Interacting and Relating With Others*, *Caring For Yourself*, and Health and Physical Well-Being, with no limitation in the domain of Moving About and Manipulating Objects." [Filing No. 12-15 at 118 (emphasis added).] In response, Dr. Pitcher stated that "[The ALJ's] summary of my testimony is accurate." [Filing No. 12-15 at 117.] Additionally, during his examination of Dr. Pitcher, M.R.C.'s counsel specifically asked if T.M.H.'s social behavior, including her lack of interaction with other children, indicates a marked impairment in social functioning – the third domain. [Filing No. 12-2 at 54.] Dr. Pitcher replied, "[n]ot in my opinion," explained that "[m]any children do not interact at the preschool and kindergarten levels and that's one of the things that teachers have on their list to help promote and develop is social interaction," and concluded "I wouldn't even say it is a problem at this point." [Filing No. 12-2 at 54-55.]

  The ALJ is entitled to deference in his decision to afford great weight to Dr. Pitcher's testimony because the determination regarding whether T.M.H. has an impairment that functionally equals a listing was not patently wrong. The totality of Dr. Pitcher's testimony indicates that she was of the opinion that T.M.H. had no marked limitations, and the ALJ explained that he relied on Dr. Pitcher's opinions as to the two domains in question because those opinions are also supported by the medical evidence of record. [Filing No. 12-2 at 24; Filing No. 12-2 at 26-27]. The ALJ conducted a thorough review of medical records, school records, other medical opinion evidence, and testimony by T.M.H.'s mother and grandmother and explained how those pieces of evidence supported his overall conclusion, and in turn corroborated Dr. Pitcher's opinion. With respect to the third domain specifically, the ALJ relied on three additional medical opinions

9

by Dr. Roush, Dr. Kelley, and Erin Zoch (a speech-language pathologist), all of which suggested that T.M.H. did not have a marked limitation. [Filing No. 12-2 at 24 (discussing Filing No. 12-13 at 94 (Dr. Roush finding that T.M.H. had "less than marked" limitation in interacting and relating with others); Filing No. 12-13 at 88 (Dr. Kelley finding that T.M.H. had "no limitation" in interacting and relating with others); and Filing No. 12-13 at 73-75 (Ms. Zoch's opinion that T.M.H. had mild to moderately delayed language skills, but also that she was "happy, friendly, hard working, and compliant" and "displayed appropriate eye contact"))]. As to the fifth domain, the ALJ relied on M.R.C.'s testimony that T.M.H. can feed herself to determine that T.M.H. has a less than marked limitation, and also on the opinions of Dr. Kelley and Dr. Roush. [Filing No. 12-2 at 27 (discussing Filing No. 12-13 at 89).]

Moreover, the same evidence that supports the ALJ's determination regarding the credibility of Dr. Pitcher's opinion also constitutes substantial evidence on which the ALJ's decision could have properly been based irrespective of Dr. Pitcher's opinion. In other words, even if Dr. Pitcher's testimony were to be excluded from the record, the remaining evidence is sufficient to establish a substantial evidentiary basis for the denial of benefits. Because the ALJ sufficiently built a logical bridge from this remaining evidence to his conclusion, this Court must affirm the ALJ's findings.

Though the fact that there is substantial independent evidence to support the ALJ's decision is determinative with respect to the challenge to Dr. Pitcher's opinion, the Court notes that M.R.C.'s contention that the opinion is misleading because it "apparently failed to consider" medical evaluations by Dr. Battocletti and Dr. Rushton is entirely without merit. [*See* Filing No. 24 at 7.] Dr. Pitcher indicated to the ALJ during her testimony that she was in possession of both of those medical evaluations and that she had reviewed that medical evidence and T.M.H.'s school

10

records.  [Filing No. 12-2 at 43 (Dr. Pitcher stating she had exhibits up to and including Exhibit 21F (Dr. Battocletti's evaluation is Exhibit 20 F, [Filing No. 12-15 at 95-107], and Dr. Rushton's evaluation is Exhibit 21F, [Filing No. 12-15 at 108-111]))].  While M.R.C. asserts that these evaluations are significant because they resulted in the diagnosis of ADHD, [Filing No. 24 at 7], Dr. Pitcher was clearly aware of this diagnosis and discussed it in her testimony, [Filing No. 12-2 at 45-48].

The Court finds that Dr. Pitcher's testimony did not mislead the ALJ, and that the ALJ adequately explained why he gave weight to Dr. Pitcher's testimony by citing to other medical evidence that was consistent with Dr. Pitcher's opinion.

**B. Alleged Disregard for or Rejection of Evidence Proving Disability**

It is well established that an ALJ may not simply ignore evidence contrary to his determination.  *See, e.g., Diaz*, 55 F.3d at 308.  *See also Zurawski v. Halter*, 245 F.3d 881, 888 (7th Cir. 2001) (an ALJ "may not ignore an entire line of evidence that is contrary to [his] findings" and must explain why contradictory evidence is overcome by the evidence on which he relied) (citations omitted).

In addition, a claimant who wishes to challenge the ALJ's determination must articulate the specific grounds upon which the challenge is based.  "A generalized assertion of error is not sufficient to challenge an adverse ruling."  *Cadenhead v. Astrue*, 410 F. App'x 982, 984 (7th Cir. 2011) (citing *Anderson v. Hardman*, 241 F.3d 544, 545 (7th Cir.2001)).  In addition, "undeveloped or unsupported contentions are waived."  *Id.* (citing *Long v. Teachers' Ret. Sys. of State of Ill.*, 585 F.3d 344, 349 (7th Cir.2009); *Jones v. InfoCure Corp.*, 310 F.3d 529, 534 (7th Cir.2002)).

M.R.C. has not identified any evidence that the ALJ ignored.  Her contention that the ALJ ignored evidence that proves T.M.H.'s disability is therefore undeveloped and waived.  However,

11

even if the argument had not been waived, the Court does not find any evidence proving disability that the ALJ clearly ignored. Every piece of evidence discussed in M.R.C.'s brief was addressed or referenced in the ALJ's opinion, including the medical evaluations of Dr. Battocletti and Dr. Rushton, which M.R.C. erroneously alleges were ignored by Dr. Pitcher, and upon which the ALJ ultimately relied. [Filing No. 12-2 at 18-19.]

## IV.
### CONCLUSION

For the aforementioned reasons, the Court can find no legal basis presented by M.R.C. to reverse the ALJ's decision that T.M.H. was no longer disabled as of April 30, 2012, and has not become disabled again since then. Therefore, the decision below is **AFFIRMED**. Final judgment shall issue accordingly.

Date: June 13, 2016

_Jane Magnus-Stinson_
Hon. Jane Magnus-Stinson, Judge
United States District Court
Southern District of Indiana

**Distribution via ECF only to all counsel of record**